# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESS LEVENTHAL, ET AL., | CIVIL ACTION |
| *Plaintiffs*, | |
| v. | No. 18-cv-2727 |
| THE MANDMARBLESTONE GROUP LLC, ET AL., | |
| *Defendants*. | |

Goldberg, J.                                                                                     May 1, 2019

## Memorandum Opinion

Currently pending before me are the Motions to Dismiss filed by Defendants, The MandMarblestone Group, LLC ("MMG") and Nationwide Trust Company FSB ("Nationwide"). For the following reasons, these Motions will be granted in part, and denied in part.

## I.     FACTUAL BACKGROUND

On June 28, 2018, Plaintiffs, Jess Leventhal, The Leventhal Sutton & Gornstein 401(k) Profit Sharing Plan (the "Plan"), and Leventhal Sutton & Gornstein, Attorneys at Law ("LS&G Firm"), filed a Complaint against Defendants MMG and Nationwide for breach of contract (Count One), breach of fiduciary duty under the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") (Count Two), and negligence (Count Three).

Plaintiffs aver the following facts:

1. On November 10, 2011, Plaintiff LS&G Firm entered into the Retirement Plan Services Agreement with Defendant MMG (the "MMG Agreement"). (Compl. ¶ 7, ECF No. 1.)

2. Pursuant to the MMG Agreement, LS&G Firm retained MMG as a "consulting firm," whereby MMG agreed to "design[], administer[], and consult[] on" the Plan. (MMG Agreement 11/10/11 at 2, 11, Compl. Ex A, ECF No. 1-1.)

1

3. The Plan is a retirement savings plan that allows employees to save and invest portions of their paycheck before taxes are taken out, pursuant to Internal Revenue Code § 401(k). As required by § 401(k), LS&G Firm "sponsored" the Plan as the employer for the benefit of its employees (i.e., LS&G Firm is the "Plan Sponsor"). (Id.)

4. On December 1, 2014, LS&G Firm entered into an agreement with Defendant Nationwide (the "Nationwide Agreement"), whereby Nationwide agreed to serve as the "custodian" of the Plan. (Compl. ¶ 8.)

5. Under the Nationwide Agreement, LS&G Firm is the "Plan Sponsor." Defendant MMG is designated as the "Plan Administrator," rendering MMG the "named fiduciary for purposes of ERISA." Plaintiff Leventhal is designated as the Plan trustee and Iron Financial, LLC (which is not a party to this matter) is designated as the advisor/broker. (Nationwide Agreement 10/15/14 at 6–7, 15, 97, Compl. Ex. B, ECF No. 1-2.)

6. The Nationwide Agreement further provides Nationwide with the following "general administrative responsibilities:"

> Accept instructions in the Required Format from the Plan Sponsor or Administration Firm regarding the allocation, distribution or other disposition of assets of the Account and all matters relating thereto;
>
> Cause any portion or all of the Account to be issued, held, or registered in the individual name of Nationwide, in the name of its nominee, in an affiliated securities depository, or in such other forms as may be required or permitted under applicable law (however, the records of Nationwide shall indicate the true ownership of such property);
>
> \* \* \*
>
> Commence, maintain, or defend any litigation necessary in connection with the administration of the Account, except that Nationwide shall not be obligated to do so unless it is to be indemnified to its satisfaction against all expenses and liabilities sustained or anticipated by reason thereof;
>
> Hold part or all of the account uninvested as may be necessary or appropriate in accordance with the Cash Processing Provision;
>
> Withhold the appropriate taxes from any distribution, remit such taxes with the relevant government authorities, and report such payments on the informational returns prescribed by such authorities, identifying itself as the payor of such distributions;
>
> \* \* \*
>
> Take all other acts necessary for the proper administration of the Account.

Id. at 16–17.

7. The Nationwide Agreement also provides that "any action to be taken by Nationwide under the Agreement shall be taken upon Written Instruction from the Plan Sponsor or Administration Firm" and that "Nationwide shall comply with such instructions and shall incur no liability for any loss which may result from any action or failure of action on its part due to its compliance with such Written Instructions." (Id. at 19.)

8. On December 31, 2015, Plaintiff Leventhal withdrew $15,000 from his Plan account by completing a withdrawal request form, which is the method prescribed by Nationwide. Plaintiff then emailed the form to MMG. Subsequently, Nationwide transferred the requested $15,000 to Plaintiff Leventhal from his account. (Compl. ¶¶ 10–12.)

9. Sometime after December 31, 2015, "unknown criminal(s)" obtained a copy of Plaintiff Leventhal's original withdrawal form by using an "unknown method of cyber-fraud possibly relating to the electronic transmission of that form." (Id. ¶ 13.)

10. Thereafter, these criminals "posed electronically" as Plaintiff Leventhal's Office Administrator and sent fraudulent withdrawal forms to MMG, which appeared to originate from Plaintiff Leventhal's office email account. These fraudulent withdrawal forms requested that Defendants send the funds to a bank account that did not belong to Plaintiff Leventhal and had not been previously used by him. (Id. ¶ 14.)

11. As a result of the fraudulent withdrawal requests, Plaintiff Leventhal's account in the Plan was depleted from containing more than $400,000 to $0. (Id. ¶ 15.)

12. Plaintiffs obtained documents from MMG, which allegedly indicate that MMG was aware of the "peculiar nature" and frequency of these fraudulent withdrawal forms, but did not communicate any of these concerns or observations to Plaintiffs. (Id. ¶¶ 17–23.)

13. Nationwide improperly distributed the funds to the bank account that was "fraudulently designated by cyber-criminals, even though that account did not actually belong to Mr. Leventhal and had never been authorized or used by him previously." Moreover, Nationwide failed to authenticate the withdrawal forms and signatures. (Id. ¶¶ 31–32, 35, 39.)

14. Neither Defendant implemented the "commonly employed procedures and safeguards" used to notify Plaintiffs of these strange requests and/or verify the authenticity of the requests. (Id. ¶¶ 38–42.)

15. To date, law enforcement officials have been unable to apprehend the criminals or recover the stolen funds. Plaintiffs' insurance claims were also denied. (Id. ¶ 42.)

## II. STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that

3

is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id.

To determine the sufficiency of a complaint under Twombly and Iqbal, a court must take the following three steps: (1) the court must "take note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (alterations and citations omitted).

### III. DISCUSSION AND ANALYSIS

The Complaint alleges a federal claim pursuant to ERISA for the breach of fiduciary duty (Count Two) and two related state claims of breach of contract (Count One) and negligence (Count Three). Defendants move to dismiss all the claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs respond that they have sufficiently pled a claim for all three causes of action. For the reasons stated infra, I will deny Defendants' Motions to Dismiss as to the ERISA claim (Count Two), but grant Defendants' Motions as to the state law claims (Counts One and Three).

#### A. ERISA Claim (Count Two)

"ERISA is a 'comprehensive' statute that is 'the product of a decade of congressional study of the Nation's private employee benefit system.'" Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A), 768 F.3d 284, 291–92 (3d Cir. 2014) (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 251 (1993)). A 401(k) retirement plan is one such employee benefit that

4

is regulated by ERISA. Id. (citing LaRue v. DeWolff, Boberg & Assoc., Inc., 552 U.S. 248, 255 (2008)). "ERISA imposes fiduciary responsibilities on certain persons. ERISA fiduciaries must act solely in the interest of the plan participants and beneficiaries." Id. (citing 29 U.S.C. § 1104(a)(1)(A)(ii)). To state a claim for breach of fiduciary duty under ERISA, the plaintiff must establish the following elements: "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." Leckey v. Stefano, 501 F.3d 212, 225–26 (3d Cir. 2007).

### 1) **Plaintiffs Have Sufficiently Pled that Defendants Are "Fiduciaries" Under ERISA**

Defendant MMG moves to dismiss Plaintiffs' breach of fiduciary duty claim (Count Two), arguing that Plaintiffs have failed to allege facts demonstrating that MMG was acting as a "fiduciary" under ERISA because MMG did not have any "discretionary control or authority" over the Plan. (Def. MMG's Mot. Dismiss at 7–13, ECF No. 20.) Similarly, Defendant Nationwide moves to dismiss Plaintiffs' breach of fiduciary duty claim (Count Two), arguing that Plaintiffs have failed to allege facts demonstrating that Nationwide was acting as a "fiduciary" under ERISA because Nationwide was a mere "custodian." (Def. Nationwide's Mot. Dismiss at 7–12, ECF No. 22.) Plaintiffs respond that they have adequately pled that both Defendants were functioning as fiduciaries for purposes of ERISA by alleging that MMG was the named fiduciary of the Plan and that Nationwide exercised actual control over the Plan assets. (Pls.' Resp. at 6–13, ECF No. 25.)

Under ERISA, there are two ways by which a person or entity is considered a "fiduciary" to a plan, thereby having fiduciary responsibilities. First, a person or entity is a "fiduciary" if they "are named in the plan as such." Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.), 768 F.3d 284, 290–91 (3d Cir. 2014) (citing 29 U.S.C. § 1102(a)). Second, a person or entity is a fiduciary where he "functions" as a fiduciary. Id. (citing 29 U.S.C. § 1002(21)(A)). A person or entity "functions" as a fiduciary in any of the following three ways:

5

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,
>
> (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or
>
> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

"Subsection (i) of 29 U.S.C. § 1002(21)(A) [of ERISA] differentiates between those who manage the plan in general, and those who manage the plan assets . . . A significant difference between the two clauses is that discretion is specified as a prerequisite to fiduciary status for a person managing an ERISA plan, but the word 'discretionary' is conspicuously absent when the text refers to assets." Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Assocs., Inc., 237 F.3d 270, 272–73 (3d Cir. 2001). Because "[t]he statute treats control over the cash differently from control over administration[,] . . . [a]ny control over disposition of plan money makes the person who has the control a fiduciary." Id. at 274 (quoting IT Corp. v. Gen. Am. Life Ins. Co., 107 F.3d 1415, 1421 (9th Cir. 1997)); see also Srein v. Frankford Tr. Co., 323 F.3d 214, 221 (3d Cir. 2003) (finding that the defendant exercised "control" over the disposition of the plaintiff's assets where the defendant received life insurance proceeds and erroneously distributed them to another customer).

"This so-called 'functional' fiduciary duty is contextual—it arises 'only to the extent' a person acts in an administrative, managerial, or advisory capacity to an employee benefits plan." Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.), 768 F.3d 284, 290–91 (3d Cir. 2014) (quoting Pegram v. Herdrich, 530 U.S. 211, 222 (2000)). Accordingly, the mere safeguarding of assets does not render an individual a fiduciary pursuant to ERISA. See,

e.g., Wettlin, 273 F.3d at 275 ("ERISA does not consider as a fiduciary an entity such as a bank when it does no more than receive deposits from a benefit fund on which the fund can draw checks."); In re Mushroom Transp. Co., Inc., 382 F.3d 325, 347 (3d Cir. 2004) (finding that the defendants were not fiduciaries for purposes of ERISA where they had no right or discretion to dispose of the assets, but merely held the plan funds in an escrow account).

With this precedential background in mind, I conclude that Plaintiffs have satisfactorily alleged that Defendant MMG is a fiduciary primarily because MMG was explicitly designated as the "named fiduciary for purposes of ERISA" in the Nationwide Agreement. (See supra ¶ 5.) Plaintiffs have also averred that the MMG Agreement states that MMG was hired to "administer" the Plan, and received all of the withdrawal request forms for authorization. (See supra ¶¶ 2, 7.) Because Plaintiffs have alleged that MMG is the "named fiduciary" of the Plan in the Nationwide Agreement, Plaintiffs have sufficiently alleged that MMG is a fiduciary for purposes of ERISA. See Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.), 768 F.3d 284, 290 (3d Cir. 2014) (citing 29 U.S.C. § 1102(a)) ("ERISA provides that a person is a fiduciary to a plan if the plan identifies them as such.").

Plaintiffs have also sufficiently alleged that Defendant Nationwide is a fiduciary, claiming that Nationwide had "actual control" of the Plan assets (i.e., money) so as to distribute and dispose of the Plan funds. (See supra ¶¶ 8–10.) Moreover, the Nationwide Agreement provides Nationwide with "general administrative responsibilities" that include the ability to "[t]ake all other acts necessary for the proper administration of the Account." (See supra ¶ 6.) Plaintiffs' allegation that Nationwide had the ability to dispose of the plan assets is distinguishable from a bank that only receives deposits for the plan or a corporation that merely holds the plan funds in an escrow account. Id. at 275 ("ERISA does not consider as a fiduciary an entity such as a bank

when it does no more than receive deposits from a benefit fund on which the fund can draw checks."); In re Mushroom Transp. Co., Inc., 382 F.3d 325, 347 (3d Cir. 2004) (finding that the defendants were not fiduciaries for purposes of ERISA where they had no right or discretion to dispose of the assets, but merely held the plan funds in an escrow account).

Nationwide insists that Plaintiffs have failed to allege an ERISA claim because Nationwide's role is merely "custodial." In support, Nationwide points to language in the Nationwide Agreement requiring Nationwide to receive "Written Instruction" from MMG or LS&G Firm before taking any action. (See supra ¶ 7.) However, Nationwide conflates the statutory requirement by arguing that it does not have "discretionary authority or control" over the Plan assets. As discussed above, there are two ways to be considered a "fiduciary" under ERISA because § 1002(21)(A)(i) "differentiates between those who manage the plan in general, and those who manage the plan assets." Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Assocs., Inc., 237 F.3d 270, 272–73 (3d Cir. 2001). While a person can be a fiduciary for exercising discretionary authority or control by managing the plan, a person can also be a fiduciary for exercising "any authority or control respecting management or disposition of its [the Plan's] assets." 29 U.S.C. § 1002(21)(A); see also Bd. of Trustees of Bricklayers & Allied Craftsmen, 237 F.3d at 272–73 ("[T]he word 'discretionary' is conspicuously absent when the text refers to assets."). In fact, "[a]ny control over disposition of plan money makes the person who has the control a fiduciary." Id. at 274 (quoting IT Corp. v. Gen. Am. Life Ins. Co., 107 F.3d 1415, 1421 (9th Cir. 1997)). Accordingly, Plaintiffs have alleged an ERISA claim by pleading that Nationwide had control of the Plan assets.

Defendants also rely on Nagy v. DeWese, 771 F. Supp. 2d 502, 513 (E.D. Pa. 2011) for the argument that § 1002(21)(A)(i) requires the defendant to have the practical authority to dispose

8

of the plan assets without the trustee's direction. However, this case is distinguishable because the defendant in Nagy only paid monthly benefits and issued checks pursuant to the plaintiff's explicit instructions. In contrast, Plaintiff here alleges that Nationwide had control of the Plan accounts so as to distribute the Plan funds, and was provided with the authority to "[t]ake all other acts necessary for the proper administration of the Account." (See supra ¶¶ 6, 8–10.) Nagy is also distinguishable because the court was deciding a motion for summary judgment, which is a much higher standard than the one applicable at this juncture. Because Plaintiffs have alleged that Nationwide had actual control of the Plan assets, Plaintiffs have sufficiently alleged that Nationwide is a fiduciary for purposes of ERISA.

Accordingly, I find that Plaintiffs have sufficiently pled that both Defendants are fiduciaries for purposes of ERISA.

### 2) **Plaintiffs Have Sufficiently Pled that Defendants Breached Their Fiduciary Duties**

Defendant MMG also argues that, even if it was a fiduciary, Plaintiff has failed to allege any breach of fiduciary duty under ERISA because there is no duty to ensure the security of Plaintiffs' IT systems. (Def. MMG's Mot. Dismiss at 12–13.) Similarly, Defendant Nationwide argues that, even if it was a fiduciary, Plaintiff has failed to allege any breach of fiduciary duty because there is no duty to prevent forgeries and the Nationwide Agreement disclaims liability for any loss. (Def. Nationwide's Mot. Dismiss at 12–14.) Plaintiffs respond that safeguarding trust assets constitutes a core fiduciary duty for purposes of ERISA. (Pls.' Resp. at 18–20.) Plaintiffs further respond that ERISA invalidates contractual provisions that disclaim fiduciary responsibility. (Id. at 21–24.)

"ERISA imposes upon a fiduciary the duty to act 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and

9

familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" Srein v. Frankford Trust Co., 323 F.3d 214, 223 (3d Cir. 2003) (quoting 29 U.S.C. § 1104(a)(1)(B)). Whether a fiduciary has violated a fiduciary duty is a "fact intensive issue." Id.; see also Sec'y of Labor v. Doyle, 657 F. App'x 117, 127 (3d Cir. 2016) (remanding the case to the district court to make detailed factual findings as to when the defendant knew or should have known that the fund was being mismanaged or underfunded such that she failed to monitor the fund or deviated from the ERISA standard of care).

Plaintiffs have sufficiently pled the breach of a fiduciary duty by averring that MMG and Nationwide failed to act with the requisite prudence and diligence where they saw the "peculiar nature" and high frequency of the withdrawal requests that were to be distributed to a new bank account, but failed to alert Plaintiffs or verify the requests. (See supra ¶¶ 12–13.) Moreover, Plaintiffs have averred that Defendants failed to implement "the typical procedures and safeguards" used to notify Plaintiffs of the strange requests and/or verify the requests. (See supra ¶ 14.) In light of the above-noted facts alleged regarding Defendants' duty, I find that Plaintiffs have sufficiently pled breach of fiduciary duties.

Finally, Nationwide argues that the contract provisions of the Nationwide Agreement declaiming liability preclude Plaintiffs' recovery for breach of fiduciary duty. Plaintiffs correctly respond that such waivers of fiduciary duty are prohibited by ERISA. Under ERISA, "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 593 (3d Cir. 2009) (quoting 29 U.S.C. § 1110(a)); see also Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.), 768 F.3d 284, 299 (3d Cir. 2014) ("ERISA precludes fiduciaries from contracting

away their responsibilities."). Thus, Nationwide's reliance on the disclaimers in the contract is without merit.

Accordingly, I find that Plaintiffs have sufficiently pled that Defendants breached a fiduciary duty.

### 3) Plaintiffs Have Sufficiently Pled Loss

Whether Plaintiffs have pled the element of "loss" is not disputed. To establish the third element of "loss," the plaintiff must establish that the defendant's breach "caused a loss to the plan." Leckey v. Stefano, 501 F.3d 212, 226 (3d Cir. 2007). One way to evaluate the loss is to compare the value of the plan assets before and after the breach. Id. Certainly, Plaintiffs have pled the element of "loss" by averring that Plaintiff Leventhal lost the $400,000 that was taken from his Plan account, which was caused by Defendants' failure to safeguard the Plan assets. (See supra ¶¶ 11–14.)

Given that Plaintiffs have satisfactorily pled the elements of breach of fiduciary duty, I will deny Defendants' Motions to Dismiss as to this claim.

### B. Plaintiffs Remaining State Law Claims

Defendants argue that Plaintiffs' state law claims for breach of contract (Count One) and negligence (Count Three) are preempted by ERISA. (Def. MMG's Mot. Dismiss at 13–14; Def. Nationwide's Mot. Dismiss at 5–7.) Plaintiffs respond that these claims are not preempted because the legal duties arise under separate contracts than the Plan. (Pls.' Resp. at 25–29.)

"Congress intended for the causes of action and remedies available under ERISA § 502 to be the exclusive vehicles for actions by ERISA plan participants asserting improper plan administration." Menkes v. Prudential Ins. Co. of Am., 762 F.3d 285, 294 (3d Cir. 2014) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987)). "A claim is conflict preempted by § 502

when it 'duplicates, supplements, or supplants the ERISA civil enforcement remedy.'" Id. (quoting Aetna Health, Inc. v. Davila, 542 U.S. 200 209 (2004)). "[T]he express preemption provision of ERISA[ ] provides that ERISA 'shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan' covered by the statute." Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 277 (3d Cir. 2001) (quoting 29 U.S.C. § 1144(a)) (alteration in original). "The phrase 'relate to' was given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983)) (alteration in original).

"State law breach of contract claims are preempted by ERISA's express preemption clause when the contract breached is considered an employee benefit plan under ERISA." Gilbertson v. Unum Life Ins. Co. of Am., No. 03-5732, 2005 WL 1484555, at *2 (E.D. Pa. June 21, 2005) (citing Pilot Life, 481 U.S. at 47–48). Claims sounding in negligence and bad faith are similarly preempted by ERISA where the alleged activities "fall within the realm of the administration of benefits" under the Plan. Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 273 (3d Cir. 2001).

Plaintiffs bring a breach of contract claim, alleging that MMG and Nationwide breached the MMG Agreement and Nationwide Agreement. Both of these Agreements "relate to the Plan" because they directly inform and impact the administration of the Plan, and are consequently preempted. Plaintiffs also bring a negligence claim against Defendants for breaching an unspecified duty of care in relation to safeguarding the Plan assets. Because Plaintiffs' negligence claims also relate to the administration of the Plan, these claims are similarly preempted.

Plaintiffs' reliance on two Third Circuit cases is unavailing. Plaintiffs first cite Kollman v. Hewitt Assocs., LLC, 487 F.3d 139 (3d Cir. 2007), which involves a professional malpractice

claim against a non-fiduciary plan administrator. The Third Circuit Court of Appeals held that this claim was preempted by ERISA because "[a]ny adjudication of [the plaintiff's] state law malpractice claim would necessarily require a court to consider the Plan in detail in order to properly address [the plaintiff's] arguments outside the mechanism prescribed by ERISA." Kollman, 487 F.3d at 150. Kollman supports dismissal because Plaintiffs' state law claims require me to consider the Plan and the administration of the Plan. The second case relied upon by Plaintiff is likewise distinguishable. In Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393 (3d Cir. 2004) the plaintiff's state law claims were "predicated on a legal duty that was independent of ERISA" because the plaintiff did not have standing to sue under ERISA as it was neither a participant nor a beneficiary of the Plan. Pascack, 388 F.3d at 402. This case is distinguishable because, here, Plaintiffs have standing to sue under ERISA and have, in fact, sued under ERISA.

Accordingly, I will grant Defendants' Motions to Dismiss as to the breach of contract claim (Count One) and negligence claim (Count Three).

## IV. CONCLUSION

For the foregoing reasons, I will deny Defendants' Motions to Dismiss as to the ERISA claim (Count Two), and grant Defendants' Motions to Dismiss as to the state law claims for breach of contract (Count One) and negligence (Count Three).

An appropriate Order follows.