IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESS LEVENTHAL, ET AL., | CIVIL ACTION |
| *Plaintiffs*, | |
| v. | No. 18-cv-2727 |
| THE MANDMARBLESTONE GROUP LLC, ET AL., | |
| *Defendants*. | |

Goldberg, J.                                                                                                    May 27, 2020

**MEMORANDUM OPINION**

This case involves allegations of cyber-fraud and application of the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). The various parties dispute who is responsible for an alleged fraudulent withdrawal of funds from a law firm's retirement savings plan.

Currently pending before me are Plaintiffs' "Motions to Dismiss MMG's Counterclaims, Strike Both Defendants' Affirmative Defenses, and Strike Nationwide's Third-Party Complaint." For the following reasons, Plaintiffs' Motions will be granted in part and denied in part.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

        A.      **Procedural History**

Plaintiffs include Jess Leventhal, The Leventhal Sutton & Gornstein 401(k) Profit Sharing Plan (the "LSG Plan" or the "Plan"), and Leventhal Sutton & Gornstein, Attorneys at Law ("LS&G Firm") (collectively, "Plaintiffs"). Plaintiff, Jess Leventhal ("Mr. Leventhal") is a principal of the LSG Firm as well as a participant, trustee and fiduciary of the Plan. Defendants

include MandMarblestone Group, LLC ("MMG") and Nationwide Trust Company FSB ("Nationwide"). While the parties dispute their roles and responsibilities owed to the Plan, Plaintiffs allege that MMG is the Plan Administrator and Nationwide is the Plan custodian.

On May 2, 2019, I granted in part the Motions to Dismiss filed by Defendants MandMarblestone Group, LLC ("MMG") and Nationwide Trust Company FSB ("Nationwide") such that Plaintiffs' ERISA claim is the only remaining claim. (Order May 2, 2019, ECF No. 35.)

Following my May 2, 2019 Order, MMG filed its Answer and Counterclaims and Nationwide filed an Answer and Third-Party Complaint. Plaintiffs' present Motions seek to: (1) strike MMG's Counterclaims for contribution and indemnifications, (2) strike MMG's and Nationwide's Affirmative Defenses for proportional liability, and (3) strike Nationwide's Third-Party Complaint.

### B.  Facts As Set Forth In The Pleadings

As I set forth a detailed factual background and procedural history in my May 2, 2019 Memorandum Opinion, I relay here only the facts relevant to my determination of Plaintiffs' pending Motions

The Complaint alleges, in pertinent part:

1. On November 10, 2011, Plaintiff LS&G Firm entered into the Retirement Plan Services Agreement with Defendant MMG (the "MMG Agreement"). (Compl. ¶ 7.)

2. Pursuant to the MMG Agreement, LS&G Firm retained MMG as a "consulting firm," whereby MMG agreed to "design[], administer[], and consult[] on" the Plan. (MMG Agreement 11/10/11 at 2, 11, Compl. Ex A.)

3. The Plan is a retirement savings plan that allows employees to save and invest portions of their paycheck before taxes are taken out, pursuant to Internal Revenue Code § 401(k). As required by § 401(k), LS&G Firm "sponsored" the Plan as the employer for the benefit of its employees (i.e., LS&G Firm is the "Plan Sponsor"). (Id.)

4. On December 1, 2014, LS&G Firm entered into an agreement with Defendant Nationwide (the "Nationwide Agreement"), whereby Nationwide agreed to serve as the "custodian" of the Plan. (Compl. ¶ 8.)

5. Under the Nationwide Agreement, LS&G Firm is the "Plan Sponsor." Defendant MMG is designated as the "Plan Administrator," rendering MMG the "named fiduciary for purposes of ERISA." Plaintiff Leventhal is designated as the Plan trustee and Iron Financial, LLC (which is not a party to this matter) is designated as the advisor/broker. (Nationwide Agreement 10/15/14 at 6–7, 15, 97, Compl. Ex. B.)

In its Answer, MMG alleged the following facts, which are incorporated into its Counterclaims against Plaintiffs:

1. [P]ursuant to the 401k Profit Sharing Plan and Trust Agreement By And Between: Leventhal Sutton & Gornstein, Attorneys at Law and Jess Leventhal, Thomas D. Sutton, and Sharon Gornstein, Trustees (the "LSG Plan Agreement"), the LSG Firm is expressly designated/named as the "Plan Administrator" for the LSG Plan (among the LSG Firm's other official capacities vis-à-vis the LSG Plan, including designation as the "Plan Sponsor" and "Named Fiduciary"). (MMG's Ans. ¶ 7)

2. Pursuant to the LSG Plan Agreement, MMG Agreement, and Nationwide Agreement it was the responsibility of, and within the sole authority of, the named fiduciaries of the LSG Plan, including the trustees (Mr. Leventhal and his law partners) and/or the named Plan Administrator (the LSG Firm), to authorize and approve the merits of each distribution request and provide the required authorized signature. (MMG's Ans. ¶ 23.)

3. Plaintiffs' own carelessness with respect to their employees and their computer/IT systems and policies, including their decision to permit [an employee] to work remotely from Texas and use her personal e-mail for official employment duties, permitted the cyber-fraud or other criminal fraud to occur. To the extent MMG is liable under ERISA as alleged, Mr. Leventhal, his law partners, and the LSG Firm, are equally liable in their capacity as the named fiduciaries of the LSG Plan. (MMG's Ans. ¶ 38, ECF No. 37.)

In its Counterclaims, MMG set forth two counts, including Count I for contribution against Mr. Leventhal and the LSG Firm and Count II for contractual indemnification against Mr. Leventhal, the LSG Firm, and the LSG Plan. MMG incorporated by reference its responses in its Answer and further averred that:

1. Mr. Leventhal was and is a trustee and a named fiduciary of the LSG Plan, and . . . the LSG Firm was and is the Plan Sponsor, the Plan Administrator, and a named fiduciary of the LSG Plan. (MMG's Counterclaims ¶¶ 3–5.) As such, Mr. Leventhal and the LSG

3


> Firm each owed and continue to owe fiduciary duties to the LSG Plan and its participants. (Id. ¶¶ 5–6.)

2. In the event that it is judicially determined that Plaintiffs are entitled to recover on their remaining cause of action against MMG, then Mr. Leventhal and the LSG Firm are alone liable, jointly and severally liable, or liable over to MMG by way of contribution or indemnity. (Id. ¶ 6–8.)

MMG's Affirmative Defenses at issue collectively allege that Plaintiffs are proportionally liable for the losses that Plaintiffs were named fiduciaries under the Plan, and that Plaintiffs' ERISA claim is "precluded, reduced or setoff by [Plaintiffs'] respective breaches of fiduciary duty." (MMG Aff. Defenses ¶¶ 14, 16, 17, 28, 30, 32, 40, 43, 46, 48, 49, 53.) Similarly, in its Answer, Nationwide articulated Affirmative Defenses for contribution, which likewise seek equitable contribution for the portion of loss alleged caused by Plaintiffs. (Nationwide's Aff. Defenses Nos. 2, 5.)

On May 30, 2019, Nationwide filed a Third-Party Complaint ("TPC") against the persons who alleged defrauded the Plan (the "Texas Defendants"), alleging that the Texas Defendants conspired and fraudulently withdrew the funds from the retirement account, which spurred the present litigation by Plaintiffs against MMG and Nationwide. Nationwide's TPC includes counts for (1) conspiracy to commit fraud, (2) aiding and abetting fraud, and (3) contribution and indemnification.

## II. DISCUSSION

Plaintiffs' Motions seek to: (1) dismiss MMG's Counterclaims, pursuant to Fed. R. Civ. P. 12(b)(6); (2) strike MMG's and Nationwide's Affirmative Defenses, pursuant to Fed. R. Civ. P. 14(f); and (3) strike Nationwide's TPC, pursuant to Fed. R. Civ. P. 14(a)(4). I will address each portion of the Motion individually.

**A. Plaintiffs' Motion to Dismiss MMG's Counterclaims, Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

1. Standard of Review Under Rule 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id.

To determine the sufficiency of a complaint under Twombly and Iqbal, a court must take the following three steps: (1) the court must "take note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (alterations and citations omitted).

2. MMG's Counterclaims

Plaintiffs argue that MMG's Counterclaims for contribution and indemnity should be dismissed based upon precedent holding that ERISA preempts such claims against co-fiduciaries. MMG responds that dismissal of its Counterclaims would be inappropriate given the circuit split and lack of binding precedential authority on this issue.

The United States Court of Appeals for the Third Circuit has not yet weighed in on whether contribution and/or indemnity claims are viable under ERISA. Lash v. Reliance Standard Life Ins. Co., No. 16-235, 2017 WL 2180301, at *4 (E.D. Pa. May 18, 2017). Other Circuits are divided on the issue. The Second and Seventh Circuits have permitted co-fiduciaries

5

to assert claims for contribution and indemnity in ERISA actions. Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d 12, 15–17 (2d Cir. 1991) (holding that "traditional trust law provides for a right of contribution among defaulting fiduciaries" under ERISA, reasoning that "ERISA's legislative history confirms that the Act's fiduciary responsibility provisions . . . codify and make applicable to ERISA fiduciaries certain principles developed in the evolution of the law of trusts." (citations omitted)); Chesemore v. Fenkell, 829 F.3d 803, 813 (7th Cir. 2016) ("If we are to interpret ERISA according to the background principles of trust law—as the Supreme Court has repeatedly instructed us to do—then indemnification and contribution are available equitable remedies under the statute.")

Conversely, the Eighth and Ninth Circuits have held that ERISA preempts and prohibits claims for contribution and indemnification between co-fiduciaries. Travelers v. Iada Servs., 497 F.3d 862, 867 (8th Cir. 2007) (holding that common law claims for contribution and indemnity are preempted under ERISA, reasoning that "[t]o recognize a state-law cause of action that supplements the federal scheme in these circumstances would pose an obstacle to the purposes and objectives of Congress."  (citation omitted)); Kim v. Fujikawa, 871 F.2d 1427, 1433 (9th Cir. 1989) (holding that there is no right of contribution under ERISA because "implying a right of contribution is particularly inappropriate where, as in this case, the party seeking contribution is a member of the class e.g., fiduciaries whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class e.g., ERISA plans, and where there is no indication in the legislative history that Congress was concerned with softening the blow on joint wrongdoers." (citations omitted)).

District Courts within the Third Circuit "have largely concluded that a right of contribution between fiduciaries does exist in the ERISA context." Lash, 2017 WL 2180301, at

6

*4 (citing Askew v. R.L. Reppert, Inc., 902 F. Supp. 2d 676, 686 (E.D. Pa. 2012); Site-Blauvelt Eng'rs, Inc. v. First Union Corp., 153 F. Supp. 2d 707, 710 (E.D. Pa. 2001); Green v. William Mason & Co., 976 F. Supp. 298, 301 (D.N.J. 1997); Cohen v. Baker, 845 F. Supp. 289, 291 (E.D. Pa. 1994)).  Courts permitting contribution between ERISA co-fiduciaries "have grounded their decision, in part, on the principle in trust law that defaulting fiduciaries may seek contribution from one another."  Lash, 2017 WL 2180301, at *4 (citations omitted).  The Restatement (Second) of Trusts § 258 articulates, in pertinent part: "[W]here two trustees are liable to the beneficiary for a breach of trust, each of them is entitled to contribution from the other, except that (a) if one of them is substantially more at fault than the other, he is not entitled to contribution from the other but the other is entitled to indemnity from him. . . ."  Restatement (Second) of Trusts § 258 (1959).

I am persuaded by the district court authority that allows for claims of contribution and indemnity.  And I note that nothing within the ERISA statute forecloses these types of claims.  Absent contrary precedent from the Third Circuit, I conclude that traditional trust law permits claims of contribution and indemnity to proceed in the ERISA context.

Plaintiffs' citation to Spear v. Fenkell, No. 13-02391, 2015 WL 518235, at *3 (E.D. Pa. Feb. 6, 2015) for support that district courts within this circuit "have gone both ways" on this issue is misleading.  In Spear, the district court stated that:

> [T]here is no contribution claim in favor of a *non-fiduciary*, under federal common law, in response to ERISA liability . . .  In the absence of controlling Third Circuit case law, I have concluded that the rationale of Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d 12, 16 (2d Cir.1991) [], the seminal case providing for contribution between *co-fiduciaries* faced with ERISA liability, has been undercut in the years since the decision, and that it should not be extended to provide a contribution claim for *non-fiduciaries*."

Id. at *3 (emphasis added) (citing is Spear v. Fenkell, No. 13-02391, 2014 WL 7745845, at *10 (E.D. Pa. Dec. 12, 2014), report and recommendation adopted, No. 13-02391, 2015 WL 12838816 (E.D. Pa. Aug. 14, 2015)).

Unlike in Spear, MMG's Counterclaims against Plaintiffs contain no contention between "non-fiduciaries." Rather, MMG's Counterclaims are against parties that are sufficiently plead as co-fiduciaries. Indeed, in my prior Opinion, I also held that Plaintiffs sufficiently plead that, pursuant to ERISA, MMG was a fiduciary and breached its fiduciary duties. Leventhal v. MandMarblestone Grp. LLC, No. 18-2727, 2019 WL 1953247, at *4 (E.D. Pa. May 2, 2019). Thus, in order to determine whether MMG's Counterclaims for contribution and indemnity are viable, I must determine if MMG has sufficiently pled that Plaintiffs are Plan fiduciaries that breached those fiduciary duties.

I note that Plaintiffs do not appear to dispute that they are, in fact, fiduciaries of the LSG Plan. First, Plaintiffs readily pled in the Complaint that Mr. Leventhal is a fiduciary and trustee of the LSG Plan. (See Compl. ¶ 1, ECF No. 1 ("Mr. Leventhal is a principal in the LSG Firm, as well as a participant in, and trustee of, the LSG Plan. As a plan participant and fiduciary. . . ").)

Next, MMG alleges that the LSG Firm was a named fiduciary under the LSG Plan Agreement. (MMG's Ans. ¶ 7.) Pursuant to ERISA, a person or entity is considered a "fiduciary" to a plan if they are a named as such in the plan. Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.), 768 F.3d 284, 290–91 (3d Cir. 2014) (citing 29 U.S.C. § 1102(a)). Accordingly, I find that MMG has sufficiently alleged that the LSG Firm is a fiduciary.

I also conclude that MMG has satisfactorily pled that Plaintiffs breached their fiduciary duties. "ERISA imposes upon a fiduciary the duty to act 'with the care, skill, prudence, and

diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" Srein v. Frankford Trust Co., 323 F.3d 214, 223 (3d Cir. 2003) (quoting 29 U.S.C. § 1104(a)(1)(B)).

MMG's Counterclaims allege that Plaintiffs' own carelessness with respect to their employees, their computer/IT systems, and employment policies facilitated and/or was the most substantial contributing factor in the occurrence of the cyber-fraud. (MMG's Ans. ¶ 38; MMG's Counterclaims ¶¶ 6–9.) MMG further alleges that Plaintiffs' careless conduct included their decision to permit an LSG Firm employee, whose email account was eventually hacked and utilized by the Texas Defendants, to commit the underlying fraud at issue, to work remotely from Texas, and to use her personal e-mail for her employment duties. (Id.) Upon consideration of the law and allegations in MMG's Counterclaims, I conclude that MMG has satisfactorily alleged that Plaintiffs were fiduciaries of the LSG Plan and that Plaintiffs breached those duties.

In sum, I conclude that MMG has sufficiently pled that Plaintiffs and MMG are co-fiduciaries under the Plan. Therefore, I will deny Plaintiffs' Motion to Dismiss Counts I and II of MMG's Counterclaims.

### B. Plaintiffs' Motion to Strike MMG's and Nationwide's Affirmative Defenses, Pursuant to Federal Rule of Civil Procedure 12(f)

1. Standard of Review Under Rule 12(f)

Federal Rule of Civil Procedure 12(f) "provides the means to challenge the sufficiency of affirmative defenses." Mars Inc. v. JCM Am. Corp., No. 05-3165, 2006 WL 1704469, at *3 (D.N.J. Jun. 14, 2006). Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

9

Motions to strike affirmative defenses based on insufficiency grounds "should not be granted unless the insufficiency of the defense is clearly apparent." Dann v. Lincoln Nat. Corp., 274 F.R.D. 139, 143 (E.D. Pa. 2011) (citations omitted). A "motion to strike will not be granted where the sufficiency of a defense depends on disputed issues of fact. . . disputed and substantial questions of law." Id. (citing Nupro Indus. Corp. v. Lexington Ins. Co., No. 08-4809, 2010 WL 2553698, at *2 (E.D. Pa. June 21, 2010)). District courts are afforded "considerable discretion" in deciding motions to strike, such that if there is any doubt as to whether a matter in a pleading should be stricken, the doubt should be resolved in favor of the pleading. United States v. Boston Sci. Neuromodulation Corp., No. 11-1210, 2014 WL 4402118, at *3 (D.N.J. Sept. 4, 2014) (citations omitted). "Motions to strike save time and expense, however, by making it unnecessary to litigate defenses which will not affect the outcome of the case; [such motions] will therefore be granted when a defense is legally insufficient under any set of facts which may be inferred from the allegations of the pleading." Glenside W. Corp. v. Exxon Co., U.S.A., a Div. of Exxon Corp., 761 F. Supp. 1100, 1115 (D.N.J. 1991).

    2. MMG's and Nationwide's Affirmative Defenses

MMG's Affirmative Defenses allege that Plaintiffs are proportionally liable for the losses, that Plaintiffs were named fiduciaries under the Plan, and that Plaintiffs' ERISA claim is "precluded, reduced or setoff by [Plaintiffs'] respective breaches of fiduciary duty." (MMG Aff. Defenses ¶¶ 14, 16, 17, 28, 30, 32, 40, 43, 46, 48, 49, 53.) Nationwide's Affirmative Defenses also seek equitable contribution for the portion of loss alleged caused by Plaintiffs. (Nationwide's Aff. Defenses Nos. 2, 5.) Plaintiffs now contend that MMG's and Nationwide's affirmative defenses seeking to reduce a defendant's liability on account of alleged breaches of

fiduciary duty by another party are unavailable, as breaching fiduciaries are jointly and severally liable under ERISA for all losses they enabled by failing to satisfy their duties.

MMG and Nationwide respond that Plaintiffs' motion to strike is premature because there are factual disputes, such as issues surrounding causation and whether MMG and/or Nationwide were, as a matter of law, fiduciaries. Further, MMG and Nationwide argue that courts in this circuit have permitted defendant-fiduciaries to assert affirmative defenses based upon a plaintiff-fiduciary's or plaintiff-participant's own actions or inactions. Finally, Nationwide clarifies that through its affirmative defenses, it does not seek to avoid joint and several liability, but rather, seeks contribution from the "improperly joined plaintiffs who may be responsible for [Mr.] Leventhal's losses," including the LSG Firm, the Plan, and Mr. Leventhal, himself as he was not only a Plan participant but also a trustee. (Nationwide's Opp. Br. at 2, 13.)

In ERISA actions, breaching co-fiduciaries are jointly and severally liable under ERISA for all losses. Trustees of Local 464A United Food & Comm. Workers Union Pension Fund v. Wachovia Bank, N.A., No. 09-668, 2009 WL 4138516, at *4 (D.N.J. Nov. 24, 2009). In an ERISA action in Trustees of Local 464A, the district court struck affirmative defenses seeking to bar or reduce the defendant's liability based on a plaintiff co-fiduciary's own breaches. Id. The court explained that a plaintiff-fiduciary's breach of its fiduciary duties would not absolve a co-fiduciary defendant of liability to the plan. Id. Rather, a plaintiff's breach of its fiduciary duty does not give rise to an affirmative defense of contribution or indemnification, but rather, "could simply give rise to a cause of action to be asserted on behalf of the [p]lan against Plaintiffs." Id.

In opposition to Plaintiffs' Motion to Strike, MMG cites to Dann v. Lincoln Nat. Corp., 274 F.R.D. 139 (E.D. Pa. 2011). In Dann, the court denied a non-fiduciary plan participant's motion to strike the defendants-fiduciaries' affirmative defenses, which alleged that the plan's

11

losses were proximately caused the plaintiffs. Id. at 144. The court explained that the defenses "appear to go to the heart of a requisite element for" plaintiff's claim, specifically causation. Id. In denying the motion to strike, the court noted that such issues were more appropriately resolved after discovery and a hearing on the merits. Id.

Dann, however, is distinguishable. There, the court specifically noted that its ruling was based on the fact that the plaintiff there was not a trustee. Id. The court further remarked that plaintiff's non-trustee status was different from cases in which affirmative defenses were not permitted—cases in which a fiduciary attempted to assert affirmative defenses to set off or bar liability based on the proximate cause of loss by a co-fiduciary. Id. at n.2 (citing Trustees of Local 464A United Food, 2009 WL 4138516).

Here, I find that MMG's and Nationwide's affirmative defenses—seeking to bar or reduce their liability based on co-fiduciary Plaintiffs' alleged proximate cause of the losses—are legally insufficient. While MMG and Nationwide can pursue claims of contribution and indemnity and resolve any issues regarding causation of losses through their counterclaims, they cannot reduce their joint and several liability owed by ERISA fiduciaries for plan losses through the assertion of such affirmative defenses. Therefore, I will grant Plaintiffs' Motion to Strike MMG's and Nationwide's Affirmative Defenses at issue. I will, however, afford Nationwide leave to amend its answer to include counterclaims for contribution and indemnity, consistent with this opinion.

**C. Plaintiffs' Motion to Strike Nationwide's Third-Party Complaint, Pursuant to Federal Rule of Civil Procedure 14(a)(4)**

1. Standard of Review Under Rule 14(a)(4)

Under Rule 14(a)(4), "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately." "When considering whether to allow, or to strike, a third-party complaint,

courts consider whether the third-party complaint would introduce an unrelated controversy or unduly complicate the case at trial." Hearn v. Oriole Shipping, LLC, No. 17-2759, 2018 WL 1509331, at *3 (E.D. Pa. Mar. 27, 2018) (citations omitted). Other factors to consider are the merit of the third-party complaint and the possible prejudice to the plaintiff. Scott v. Walter Kidde Portable Equip., Inc., No. 02-1460, 2002 WL 1880521, at *1 (E.D. Pa. Aug. 12, 2002). District courts are afforded discretion to strike or sever third-party complaints, pursuant to Rule 14. Reynolds v. Rick's Mushroom Serv., Inc., No. 01-3773, 2006 WL 1490105, at *4 (E.D. Pa. May 26, 2006).

  2. Nationwide's Third-Party Complaint

Plaintiffs argue that the entirety of Nationwide's TPC against the Texas Defendants should be stricken. The TPC includes three counts, including: (1) conspiracy to commit fraud, (2) aiding and abetting fraud, and (3) contribution and indemnification. I will first address the parties' arguments as to Count III of the TPC and then their arguments on Counts I and II.

    a. Count III of Nationwide's Third-Party Complaint for Contribution and Indemnification

First, as to Count III in the TPC for contribution and indemnification, Plaintiffs argue that ERISA does not allow for claims against non-fiduciaries as a matter of law. (Pl.'s Mot. at 11 (citing Glaziers & Glassworkers Local 252 v. Newbridge Sec., 823 F. Supp. 1191, 1194 (E.D. Pa. 1993) ("ERISA's overall scheme does not support a fiduciary's claim for contribution or indemnification from a non-fiduciary")).

In response to Plaintiffs' arguments to strike Count III, Nationwide responds that Plaintiffs lack standing to raise challenges to the legal sufficiency of these claims and that such arguments can only be raised by the Texas Defendants under Federal Rule of Civil Procedure 12(b)(6). Nationwide stresses that Plaintiffs' attempt to strike the TPC, pursuant to Rule 14(a),

13

may only be grounded in whether the TPC introduces an unrelated controversy or unduly complicates the case at trial. As to all three counts, Nationwide argues that the TPC does not introduce unrelated claims because the TPC focuses on the crux of Plaintiffs' action—the fraudulent withdrawal of Mr. Leventhal's funds. Further, Nationwide contends that the TPC will not unduly complicate the case at trial because investigation of the fraudulent withdrawals will be explored, irrespective of Nationwide's TPC, and that such evidence will likely be relevant for Nationwide's defense.

To assert a third-party claim under Rule 14(a)(1), "the third-party liability must be entirely dependent on the impleader's liability to the original plaintiff. Thus, if the third-party plaintiff is found liable on the main claim, the third-party defendant will be liable to the third-party plaintiff under a recognized theory of derivative liability." Simonson v. Borough of Taylor, No. 18-2445, 2019 WL 6715789, at *4 (M.D. Pa. Dec. 10, 2019). "Third-party liability must depend on the outcome of the main claim and derive from defendant's liability to the plaintiff in the main action so that, if the third-party plaintiff is found liable, the third-party defendant will be liable to the third-party plaintiff under a theory of indemnification, contribution, or some other theory of derivative liability recognized by the relevant substantive law." Rocuba v. Mackrell, No. 10-1465, 2011 WL 5869787, *1 (M.D. Pa. 2011); Hartford Cas. Ins. Co. v. ACC Meat Co., LLC, 10-1875, 2011 WL 398087, *1 (M.D. Pa. Feb. 2, 2011) ("A third-party plaintiff may only use Rule 14(a) to implead a third-party defendant who is, or may be, liable to the third-party plaintiff derivatively or secondarily.")

The Third Circuit has not opined on whether parties in ERISA actions may bring claims for contribution and indemnification against non-fiduciaries arising from a breach committed by

a fiduciary.[1]  However, the United States Supreme Court has directed that "an ERISA action by a participant, beneficiary, or fiduciary against a non-fiduciary is permitted if there is evidence that the non-fiduciary defendant knowingly participat[ed] in a prohibited transaction as a party in interest."  Askew v. R.L. Reppert, Inc., 902 F. Supp. 2d 676, 688 (E.D. Pa. 2012) (citing Harris Trust and Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 243 (2000); Renfro v. Unisys Corp., 671 F.3d 314, 325 (3d Cir. 2011)).  A "party in interest" includes any fiduciary to the plan, a person providing services to the plan, or an organization covered by the plan.  29 U.S.C. § 1002(14).  "Prohibited transactions" between a plan and "party in interest" include the transfer of plan assets to the "party in interest."  29 U.S.C. § 1106(a)(1)(D).

Here, I find that the TPC fails to allege that the Texas Defendants are either fiduciaries or "parties in interest" to the Plan.  While Nationwide drops a footnote in its brief, claiming that the Texas Defendants are "arguably fiduciaries" because they "exercised actual control over plan assets," I find that the TPC falls well short of the requisite pleading standard.  Accordingly, Count III of the TPC contains no factual averments, which taken as true, would support a plausible claim of liability against the Texas Defendants based upon their involvement, as non-fiduciaries, in any breach of fiduciary duty committed by Nationwide.  In turn, as I find that any amendment on this count would be futile, therefore, I will not permit Nationwide to file an amended Third-Party Complaint.

While the actions of the Texas Defendants will be central to the discovery in this case, I find that no viable claim exists under ERISA to support the TPC.  Thus, I will exercise my

---

[1]  At least one court in this district has held that such claims are not viable.  Glaziers and Glassworkers Union Local 252 Annuity Fund v. Newbridge Secs. Inc., 823 F. Supp. 1191, 1196 (E.D. Pa. 1993) ("The text and stated purpose of the statute negate the inference that Congress intended courts to create federal common law that would permit a fiduciary to seek contribution or indemnification from a non-fiduciary.")

appropriate discretion, pursuant to Rule 14(a)(4), and will grant Plaintiffs' motion to strike Count III of Nationwide's TPC.

> b. <u>Counts I and II of Nationwide's Third-Party Complaint for Conspiracy to Commit Fraud and Aiding and Abetting</u>

Finally, as to the remaining Counts I and II in the TPC, for conspiracy to commit fraud and aiding and abetting fraud, Plaintiffs argue that these state claims should stricken as they would complicate the matter. Alternatively, Plaintiffs request that Counts I and II be severed to allow Nationwide to pursue them in separate litigation. In opposition, Nationwide argues that Counts I and II should be permitted to remain because they introduce a related controversy that does not unduly complicate the case.

While the investigation of the Texas Defendants' actions will, of course, be the subject in the present action between Plaintiffs, MMG, and Nationwide, I find that the litigation of the TPC claims between the Texas Defendants and Nationwide will unduly complicate the action by introducing the extraneous questions of remedies permitted in the third-party action. Therefore, I will exercise my discretion to strike the remaining state law claims in Counts I and II of the TPC.

### III. CONCLUSION

For the foregoing reasons, I will (1) deny Plaintiffs' Motion to Dismiss MMG's Counterclaims; (2) grant Plaintiffs' Motion to Dismiss MMG's and Nationwide's Affirmative Defenses; and (3) grant Plaintiffs' Motion to Strike Nationwide's Third-Party Complaint.

An appropriate Order follows.